UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

MAY 2 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

AINSWORTH C. JACKSON,          :

    Plaintiff,          :

                :

    v.          :  Civil Action No. 1:08-cv-00408(RWR)

                :

FEDERAL BUREAU OF PRISONS,  :

et. al. Defendants.          :

. . . . . . . . . . . . . . . . . . . . . . . . . :

### MOTION IN OPPOSITION TO DEFENDANTS GEO GROUP, INC., GEORGE SNYDER, DAVID FARMER, K.H. JOHNSON, E. HARDY'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) & 12(b)(3)

This Court accordingly has personal jurisdiction over a defendant where--as here--(1) the defendant voluntarily and deliberately undertook a business activity in the District of Columbia, and (2) the claims at issue arise out of or relate to the business activity.

Courts in this Circuit have adopted a broad reading of the "transacting business" prong of D.C. Code § 13-423(a)(1). See Sheikh v. Mr. K's Restaurant, Inc., No. 04-00515, 2005 WL 1387591, at *3 (D.D.C. June 10, 2005)(holding that even "a single act alone may be sufficient" to meet the "minimum" contacts required under the long-arm statute and due process).

A nonresident defendant's "conduct and connection with the forum state" need only be "Such [that] he should reasonably anticipate being haled into court there. World-Wide Volkswagen

Corp. v. Woodson, 444 U.S. 286, 297 (1980); See also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)(referring to this as a "fair warning" requirement)."

Accordingly, federal and state courts in the District of Columbia have held that transactions need not be extensive in number, duration or scope in order to give a defendant "fair warning."  For example, contacts with the District of Columbia consisting largely of phone conversations, letters, and isolated business trips can be sufficient.  See Sheikh, No. 04-00515, 2005 WL 1387591, at *5 (mail and telephone); Kroger, 2005 WL 4908968, at *5 (Contacts included phone, mail, and "at least one business trip to the District); Dooley v. United Techs Corp., 786 F. Supp. 65, 74 (D.D.C. 1992) (phone calls and mailings directed at the District of Columbia).

GEO has maintained extensive contacts with the District of Columbia.  These contacts far exceed the "minimum contacts" necessary to assert jurisdiction over an out-of-state defendant. GEO has competed for and won more than a dozen contracts from the Bureau of Prisons, the U.S. Marshals Service, and the U.S. Immigrations and Customs Enforcement, Department of Homeland Security; and they have a "Registered Agent" in the District of Columbia.

GEO did not enter the District of Columbia in order to petition the government.  GEO entered into the District of Columbia to solicit and transact business with the District

-2-

of Columbia and Federal governments.

The District of Columbia "long-arm-statute" is the starting point for a specific contacts analysis, and authorizes jurisdiction if the defendant: (1) has "transacted any business in the district," or (2) has caused tortious injury in the district by "an act or omission outside the district if the defendant regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered," in the district. D.C. Code Annotated §§ 13-423(a)(1), (a)(3). Section 13-423(a)(1) does not require physical presence in the district, see, e.g., Mwani v. bin Laden, 417 F.3d 1, 16-17 (D.C. Cir. 2005); see also Calder v. Jones, 465 U.S. 783, 788-90, 104 S.Ct. 1482 (1984), but it does, by its plain language, require a business transaction that has some minimal nexus to the district, see § 13-423(a)(1). Such a nexus exists with the GEO defendants and the District of Columbia because GEO Group, Inc., George Snyder, David Farmer, K.H. Johnson, and E. Hardy all "derive substantial revenue" from the District of Columbia.

In determining whether the exercise of personal jurisdiction over a non-resident defendant is proper, the court must engage in a two-part inquiry. The court must ascertain if the state's long arm statute authorizes jurisdiction. Steinberg v. International Criminal Police Org., 672 F.2d 927, 930 (D.C. Cir. 1981). If the answer is in the affirmative, the court

-3-

must then decide whether the exercise of jurisdiction is constitutionally permissible.

Section 13-423(a)(1) of the District of Columbia long-arm-statute provides that a court may exercise personal juris-diction over a person as to a claim arising from the person's "transacting any business in the District of Columbia." This provision of the long arm statute is co-extensive with the U.S. Constitution's due process guarantee. Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987); Mouzavires v. Baxter, 434 A.2d at 991-2 (D.C. App. 1981). Moreover, courts have broadly construed Section 13-423(a)(1). See Dooley v. United Technologies Corp., 786 F. Supp. 65 (D.D.C. 1992). To establish personal jurisdiction under Section 13-423(a)(1), a plaintiff must show: (1) that the defendant transacted business in the District; (2) that the claim arose from the business trans-acted in the Distsrict ; and (3) that the defendant had minimum contacts with the District such that the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice. Id. at 70 (quoting International Shoe v. Washington, 326 U.S 310, 316, 66 S.Ct. 154, 158 (1945); see also Cellutech, Inc. v. Centennial Cellular Corp., 871 F. Supp. 46, 48 (D.D.C. 1994).

Plaintiff solely relies on section 13-423(a) of the D.C. long-arm statute. Section 13-423 states in pertinent part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an

-4-

agent, as to a claim for relief arising from the person's-
(1) transacting any business in the District of Columbia
(b) When jurisdiction over a person is based solely on
this section, only a claim for relief arising from acts
enumerated in this section may be asserted against him.

The "transacting any business" provision of the District's
long arm statute embraces the contractual activities of a non-
resident defendant that cause repercussions in the District.
Mouzavires, 434 A.2d at 992.  It is therefore "sufficient . . .
that the suit [be] based on a contract which [has] [a] substantial
connection with the district."  Mouzavires, 434 A.2d at 993
(quoting McGee v. Int'l Life Insurance Co., 355 U.S. 220, 223,
78 S.Ct. 199, 201 (1957).  The fact that some of the named
defendants have never set foot in the District is not dispositive.
Reiman, 614 F.Supp. at 256-257.  1/  The focus is on the quality
and nature of contacts, and these contacts must illustrate
a deliberate and voluntary association with the forum on the
part of the defendant.  Mouzavires, 434 A.2d at 995.  Thus,
a non-resident defendant may be subject to personal jurisdiction
even if he has never been physically present in the forum state
and where his only contacts have been by mail or telephone.
This is so because, as the Supreme Court has observed, modern
telecommunication systems make physical presence in the solici-
tation and negotiation of business relationships unnecessary.
McGee, 355 U.S. at 222, 78 S.Ct. at 200.

---

1/ In Reiman, the court stated that, "a non-resident defendant
may be considered to have transacted business within the meaning
of Section 13-423(a)(1) without ever having been physically
present in the District. . . id.

-5-

Although a defendant's contract with a forum resident
will not automatically establish minimum contacts sufficient
to confer personal jurisdiction, factors including "prior
negotiations and contemplated future consequences, along with
the terms of the contract and the parties' actual course of
dealing" are relevant to the determination.  Reiman, 614 F.
Supp. at 258 (quoting Burger King Corp. v. Rudzewicz, 471 U.S.
462, 477-481, 105 S.Ct. 2174, 2184-2187 (1985).

Since defendant GEO Group, Inc. developed, solicited and
negotiated the Rivers contract from the federal defendants,
and negotiated the assignment of employment duties for the
Rivers contract, and agreed to be subject to all of the laws
of the District of Columbia, and contemplated future consequences
in addition to the parties' course of dealing constitutes
transacting business in this "forum!"  See McGee, 355 U.S.
220, 78 S.Ct. 199.  McGee, the Supreme Court upheld a California
state court's exercise of personal jurisdiction over a Texas
insurance company whose only contacts with California were
a reinsurance certificate mailed to the plaintiff in California
and the acceptance of premiums mailed by the plaintiff from
California.  The Court stated, "[I]t **was sufficient for purposes
of due process that the suit was based on a contract which
had substantial connection with that State.**"  Id. at 223, 78
S.Ct. at 201.

Where a non-resident has solicited the business relationship
and the contract calls for the performance of work within the

District of Columbia, the court may find that the transaction has such a substantial connection with the District such that the exercise of personal jurisdiction is permissible. Reiman, 614 F.Supp. at 256; Mouzavires, 434 A.2d at 995.

Plaintiff avers that the Rivers contract is partly performed in the District of Columbia. **"Statement of Works,"** **pages 6 & 7** of the Rivers contract provides that the laws of the District of Columbia govern the agreement and that it is deemed to have been executed and performed within the boundaries of the District. **"Statement of Works," page 14,** requires that all employment applications for Rivers Correctional Institution be submitted to the Bureau of Prisons in the District of Columbia for final approval of employment at Rivers. **"Statement of Works," page 19,** requires that the GEO and Rivers defendants shall not admit to, or release from, institution custody without prior Bureau of Prisons approval in the District of Columbia. **"Statement of Works," page 20,** requires the Rivers defendants to exclusively use the **"BOP SENTRY" TO OPERATE THE INSTITUTION.** **"Statement of Works," page 21,** requires the GEO & Rivers defendants to participate in any research task pursued by the BOP in the District of Columbia. **"Statement of Works," page 32,** requires the GEO & River defendants to "enter and keep current all required **"BOP SENTRY"** transactions and written documentation related to the classification and program review of inmates, progress reports and central inmate monitoring system. **(See Plaintiff's Exhibit #1)**

-7-

Finally, **"Statement of Works," page 39, lines 27-41,** states
that the GEO & Rivers defendants agreed with defendant, Federal
Bureau of Prisons in the District of Columbia that any income
received from collect telephone calls at the Rivers Correctional
Institution, which is in excess of expenses incurred, to include
refunds/rebates from carriers, shall offset the cost of the
contract.    The GEO & Rivers defendants also agreed to provide
defendant, Federal Bureau of Prisons with all documentation
in support of any agreement regarding income, refunds, rebates
and other monetary or nonmonetary reimbursements involving
the inmate telephone system; shall provide to defendant,
Federal Bureau of Prisons with copies of invoices, documentation
of expenses incurred and income received with its monthly
request for contract payment, and that defendant Federal Bureau
of Prisons shall have total access to all telephone operation
records at the Rivers Correctional Institution in Winton, North
Carolina.    **(See Plaintiff's Exhibit #1)**

Plaintiff asserts that the GEO & Rivers defendants partly
perform this contract in the District of Columbia via **Statement
of Works," page 19,** by transporting prisoners from the Rivers
Correctional Institution in Winton, North Carolina to the
District of Columbia, releasing them in the District of
Columbia, as well as admitting some to the D.C. Jail, 1901
D. Street. S.E., and picking up D.C. prisoners and transporting
them back to Winton, North Carolina to be admitted to the Rivers
Correctional Institution.    **(See Plaintiff's Exhibit #1)**

$-8-$

GEO & Rivers contacts with the District entail more than minimum contacts required. GEO has engaged in more than merely contracting with the Federal Bureau of Prisons in the District; not only did the GEO defendants assume the Federal of Bureau of Prisons contract, but they also assume contracts from the U.S. Marshals Service, and the U.S. Immigration and Customs Enforcement Agency. The GEO defendants assumed these obligations in order to reap the financial benefits from transacting business in the District of Columbia forum. Furthermore, GEO has a registered agent in the District of Columbia, who acts on behalf of the GEO defendants and allows them to conduct business in the District of Columbia.

The acts of a corporation's agent may create personal jurisdiction over the corporation in the District. Chase v. Pan-Pacific Broadcasting, Inc., 617 F.Supp. 1414, 1424 (D.D.C. 1985). To determine if a party is an "agent," the court looks to the entire relationship for evidence of mutual consent and a sufficient degree of control exercised by the principal. Johnson v. Bechtel Assoc. Professional Corp., 717 F.2d 574, 580 (D.D.C. 1983). An agency relationship is the "fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency Section 1(1)(1958). **Such a relationship exists with GEO and its registered agent in the District of Columbia.**

"Long-arm derivative jurisdiction over a foreign parent corporation has been found where the parent so controlled and dominated the activities of its resident subsidiary that the latter's separate corporate existence was in effect disregarded." Lakota Girl Scout Council, Inc. v. Harvey Fund-Raising Management, Inc., 519 F.2d 634, 637 (8th Cir. 1975); accord Chrysler Corp. v. General Motors  Corp., 589 F.Supp. 1182, 1200 (D.D.C. 1984) (in order for parent corporation to be amendable to suit in particular district based on activities of subsidiary there, it must exercise control relationship over subsidiary); Lavrov v. NCR Corp., 591 F.Supp. 102, 109 (S.D. Ohio 1984)("courts have relied on the presence of a parent or subsidiary to assert jurisdiction over the other when the subsidiary is considered a mere instrumentality of the parent").  Similarly, the Court of Appeals of Maryland--a court which guidance should be taken pursuant to the legislative history of the District longarm statute--explained that "in order to hold the corporate veil inviolate, at least insofar as jurisdiction is concerned, it is necessary as a factual matter that a corporation have some independent reason for its existence, other than being under the complete complete domination and control of another legal entity simply for the purpose of doing its act and bidding." Harris v. Arlen Properties, Inc., 256 Md. 185, 260 A.2d 22, 29 (1969); but see Vitro Electronics v. Milgray Electronics, Inc., 255 Md. 498, 258 A.2d 749, 753 (1969)(stressing need to avoid "breaking down observed distinctions between parent and subsidiary corporations, where fraud or deception is not

present."). Since "[n]o all embracing rule has been laid down
under which the relationship between two corporations may be
determined," "[t]he circumstances in each case must be examined
to determine whether a corporation through activities of another
corporation has subjected itself to jurisdiction in a state
under its long-arm statute.  Fisher v. First National Bank,
338 F.Supp. 525, 529 (S.D. Iowa); See Chrysler Motors Corp.
v. General Motors Corp., 589 F.Supp. at 1200-01 (listing many
factors the court should at least consider).

It is apparent that the GEO Group, Inc, the parent
corporation in Florida, had no other reasons for the existence
of a **"REGISTERED AGENT"** in the District of Columbia other than
to incorporate as a D.C. Corporation, which would allow them
to do business in the District, and would also subject GEO
to the laws of the District.  The GEO corporation in the District
is a subsidiary to the parent corporation in Florida, to which
the parent corporation has total and complete control.  "The
Incorporators organized the GEO's subsidiary's stock to be
100% owned by the parent GEO corporation in Florida, and they
exxpressly stated that the company had no other purpose other
than to do business in the District of Columbia.  The officers,
directors, and shareholders for the GEO's subsidiary in the
District are the same as the parent corporation in Florida.
The GEO subsidiary in the District only source of funding comes
from the parent corporation in Florida.  Applying these principles,
plaintiff has alleged facts evidencing purposeful activity

-11-

which the GEO & Rivers defendants have pursued in this juris-
diction.Moreover, this purported activity relates to the under-
lying claims.  The general rule is that personal jurisdiction
is proper only if the defendant's contacts with the forum allow
the maintenance of a suit which "does not offend traditional
notions of fair play and substantial justice.  International
Shoe Co. v. Washington, 326 U.S. at 316, 66 S.Ct. at 158.
Accordingly, the contacts between GEO's District subsidiary
(corporation) and GEO's parent corporation in Florida allows
this court to exercise personal jurisdiction over the GEO &
Rivers defendants.  Consequently, the court's personal juris-
diction over these defendants would not offend traditional
notions of fair play and substantial justice and is therefore
constitutional.

**THE RIVERS DEFENDANTS ARE AGENTS ACTING ON BEHALF OF THE
GEO & FEDERAL DEFENDANTS AND THE GEO DEFENDANTS ARE AGENTS
ACTING ON BEHALF OF THE FEDERAL BUREAU OF PRISONS DEFENDANTS.**

An agent is one who is authorized by another (principal)
to act on his behalf.  An agent-principal relationship is character-
ized by the presence of two elements.  First, there must be
an indication by the principal that the agent will act on his
behalf and subject to his control.  And second, there must
be a manifestation of consent by the agent so to act.
Restatement (Second) of Agency § 1 (1958); Rose v. Silver,
394 A.2d 1368 (D.C. App. 1978).  Accord Lott v. Burning Tree
Club, Inc., 516 F.Supp. 913, 917 (D.D.C. 1980)(Police are not
agents of Country Club because not designated as such and Club
exercised no control over the police.).  The extent of control

-12-

and consent is evidenced by both terms of the contract and by the actual dealings between the parties.  Applying the foregoing legal standards, the court must examine the contract between GEO and the Federal Bureau of Prisons and the actual on-the-job practice.

The Federal Bureau of Prisons contracted with the GEO and Rivers defendants to house predominantly D.C. sentenced felons at the Rivers Correctional Institution (See Statement of Works, page 6, Plaintiff's Exhibit #1).  Taken as a whole, the contract provides that the GEO and Rivers defendants shall act on behalf of and are subject to the authority of the Federal Bureau of Prison defendants.  Numerous provisions of the contract specify the exact nature and extent of control which the Federal Bureau of Prisons defendants exercise over the GEO and Rivers defendants.  For example, Statement of Works, page 11, line 37-42, and page 12, (See Plaintiff's Exhibit #1) provides:

> "The contractor shall fingerprint all applicants using BOP supplied forms.  Completed fingerprint forms and the SF 85 P and SF 85P-S (or equivalents) with original signatures and dates shall be submitted to the Contracting Officer for each applicant offered conditional employment.  The BOP will initiate the National Agency Check which includes the FBI name and fingerprint check.  The BOP will ordinarily advise the Warden or designee of the results of name and fingerprint checks within 90 working days of submission to the FBI.
>
> The contract further states that the [BOP] Contracting Officer shall be kept fully informed of all operations under this contract and the [Warden of Rivers CI] shall have authority to conduct these operations for and in the name of the authority of the [BOP], subject to the approval of the [BOP] contracting officer.

-13-

Section G.l of the Contract Administration Data of the Contract provides:

**"The extent and character of the work to be done by [GEO/RIVERS] shall be subject to the general supervision, direction, control and approval of the [BOP] Contracting Officer and the authorized representative of the Contracting Officer to whom [GEO/RIVERS] shall report and be responsible.**

In addition to specifying the general working relationship, the BOP-GEO/RIVERS contract provides that all personnel hired by GEO to work at the Rivers Correctional Institution must be approved by the Federal Bureau of Prisons in the District of Columbia (See **Statement of Works, page 14,** Plaintiff's Exhibit #5). The salaries of these employees are also subject to approval by the [BOP]. Furthermore, the allocation of authority and responsibility between BOP and GEO/RIVERS is further specified in the Coordinated Safety, Quality Assurance Program & Reporting Procedures Manual which is specifically incorporated into the BOP-GEO/RIVERS contract. The Safety-Quality Assurance Manual provides that a full-time BOP employee, the Contracting Officer, or Contracting Officer Representative, has primary responsibility for overseeing the safety-related aspects at the Rivers Correctional Institution. Taken as a whole, the BOP-GEO/RIVERS contract provides for extensive and pervasive control by defendant Federal Bureau of Prisons over the GEO/RIVERS defendants.

Finally, the actual day-to-day work performed by GEO/Rivers defendants at the Rivers Correctional Institution reinforces the conclusion that GEO/RIVERS defendants serve as BOP's agent.

-14-

To determine if a party is an "agent" within the broadest meaning of the term, the court looks to the entirety of the relationship for evidence of consent between the parties to establish a principal-agent relationship and for evidence of the degree of control exercised by the principal, and under the **"Symbiotic Relationship Test,"** the acts of a [private party] are attributable to the government only if the government "has so far insinuated itself into a position of interdependence with the [private party] that it must be recognized as a joint participant in the challenged activity . . . Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S.Ct. 856 (1961). In essence, the test can be considered as a determination of whether the private entity is an **"alter ego"** of the government. For example, the **"Symbiotic Relationship Test"** between the [BOP] and GEO/RIVERS defendants is established by the terms of the contract, where the federal defendants share in the profits of the GEO/RIVERS defendants. See **Statement of Works, page 39, lines 27-41,** where the following is stated:

> "Any income received by the contractor from collect calls which is in excess of expenses incurred, to include refunds, rebates from carriers, shall "OFFSET THE COST OF THIS CONTRACT." The contractor shall provide the CO with copies of any contracts between the contractor and the inmate telephone system provider(s). The contractor . . . . shall provide the CO with all documentation in support of any agreement that the contractor has . . . regarding income, refunds, rebates and other monetary or nonmonetary reimbursements involving the inmate telephone system. The contractor shall also provide the CO with copies of all invoices and other documentation of expenses incurred and income received in regards to the inmate telephone system with its monthly request for contract payment and apply the credit against the monthly payment. The

-15-

**The CO shall have total access to all telephone operation records.**

This portion of the contract shows that the federal defendants share in the telephone profits of the GEO/RIVERS defendants, which confirms that the federal [BOP] defendants "have so far insinuated themselves into a position of inter-dependence with the GEO/RIVERS defendants that they must be recognized as joint participants in this challenged activity of violating plaintiff's Privacy Act and constitutional rights.

II.  **GENERAL JURISDICTION:  "DOING BUSINESS" UNDER D.C. CODE § 13-334.**

Plaintiff asserts that this Court has "general jurisdiction" over the GEO/RIVERS defendants pursuant to D.C. Code § 13-334. The statute reads in pertinent part:

> "In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.  D.C. Code § 13-334

Under the doctrine of "general jurisdiction, a court may exercise personal jurisdiction over a non-resident defendant when that non-resident defendant has engaged in "continuous and systematic" general business contacts in the forum, not-withstanding the fact that those contacts do not relate to the underlying cause of action.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415, 104 S.Ct. 1868,

-16-

80 L.Ed.2d 404 (1984); See also <u>Gorman</u> v. <u>Ameritrade Holding Corp.</u>, 293 F.3d 506, 509 (D.C. Cir. 2002); <u>El-Fadi</u> v. <u>Central Bank of Jordan</u>, 75 F.3d 668, 675 (D.C. Cir. 1996). Jurisdiction under Section 13-334(a) requires that such systematic contacts demonstrate "a" 'continuing corporate presence in the forum . . . directed at advancing the corporation's objectives.'

Plaintiff asserts that defendant GEO's systematic contacts with the Federal Bureau of Prisons, U.S. Marshals Service, and the Immigration & Customs Enforcement Agency in the District of Columbia demonstrate "a" 'continuing corporate presence in the forum which is directed at only advancing the corportion's objectives.' GEO's sole purpose for its **"REGISTERED AGENT"** in the District of Columbia was only to reap the financial benefits in the District of Columbia forum.

Plaintiff asserts that for the foregoing reasons, this Court may exercise personal jurisdiction over the GEO & Rivers defendants, and based on the aforementioned facts, this Court should affirmative deny defendants GEO & Rivers "Motion To Dismiss" for lack of jurisdiction.

Respectfully Submitted,

Ainsworth C. Jackson
Reg. No. 19728-101
Rivers Correctional Institution
P.O. Box 630
Winton, NC 27986

-17-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing "Motion In Opposition to defendants GEO & Rivers has been mailed to the following:


1.  Deborah J. Israel, Esq.
    Womble Carlyle Sandridge & Rice, PLLC
    1401 Eye Street, N.W., 7th Floor
    Washington, D.C. 20005
    Attorney for GEO & Rivers Defendants

2.  Fred E. Haynes, AUSA
    555 4th Street, N.W., Room E-4110
    Washington, D.C. 20530
    Attorney for the Federal Defendants


this **23rd** day of **May 2008.**


Ainsworth C. Jackson

-18-

# EXHIBIT 1

| CONTRACT AWARD | | | | PAGE | OF | PAGES |
|---|---|---|---|---|---|---|
| | | | | 1 | | 181 |

| TRACT NUMBER | | 2. EFFECTIVE DATE | 3. SOLICITATION NUMBER | | 4. REQUISITION/PROJECT NUMBER |
|---|---|---|---|---|---|
| ϶-005 | | See Block 15c | RFP PCC-0004 | | N/A |

| 5. ISSUED BY | CODE | N/A | 6. ADMINISTERED BY (if other than Item 5) | CODE | N/A |
|---|---|---|---|---|---|
| Federal Bureau of Prisons<br>320 First Street NW Room 500-6<br>Washington, DC 20534<br>Scott P. Stermer, Contracting Officer<br>(OMB #1103-0018 EXP 02/28/01) | | | Same Block 5<br><br>**ORIGINAL** | | |

| 7. NAME AND ADDRESS OF CONTRACTOR | CODE | | 8. PAYMENT WILL BE MADE BY |
|---|---|---|---|
| Wackenhut Corrections Corporation<br>4200 Wackenhut Drive<br>Palm Beach Gardens, FL 33410 | | | Federal Bureau of Prisons<br>Mid-Atlantic Region<br>Junction Business Park<br>10010 Junction Drive, Suite 100-N<br>Annapolis Junction, MD 20701<br>Regional Comptroller |

| 9A. DUNS NUMBER | 9B. TAXPAYER'S IDENTIFICATION NO. | 10. SUBMIT INVOICES (4 copies unless otherwise specified) TO |
|---|---|---|
| | (b)(4) | [X] ITEM 5   [ ] ITEM 6   [ ] ITEM 8   [ ] OTHER (Specify) |

### 11. TABLE OF CONTENTS

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | **PART I - THE SCHEDULE** | | | | **PART II - CONTRACT CLAUSES** | |
| X | A | SOLICITATION/CONTRACT FORM | 3 | X | I | CONTRACT CLAUSES | 11 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 4 | | | **PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH.** | |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | 40 | X | J | LIST OF ATTACHMENTS | 95 |
| X | D | PACKAGING AND MARKING | 1 | | | **PART IV - REPRESENTATIONS AND INSTRUCTIONS** | |
| X | E | INSPECTION AND ACCEPTANCE | 4 | | | REPRESENTATIONS, CERTIFICATIONS AND OTHER | |
| X | F | DELIVERIES OR PERFORMANCE | 2 | X | K | STATEMENTS OF OFFERORS | 14 |
| X | G | CONTRACT ADMINISTRATION DATA | 3 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| | H | SPECIAL CONTRACT REQUIREMENTS | 2 | | M | EVALUATION FACTORS FOR AWARD | |

**οF DESCRIPTION**
Contractor-Owned and Contractor-Operated correctional facility for an estimated population of 1,200 low security male District of Columbia (D.C.) sentenced felons.

| 13. TOTAL AMOUNT OF CONTRACT ▶ | $91,890,622.95 (FP01009T120M) |
|---|---|

| 14. CONTRACTOR'S AGREEMENT. Contractor agrees to furnish and deliver the items or perform services to the extent stated in this document for the consideration stated. The rights and obligations of the parties to this contract shall be subject to and governed by this document and any documents attached or incorporated by reference.<br><br>[X] A. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN _FOUR_ COPIES TO THE ISSUING OFFICE. (Check if applicable) | 15. AWARD. The Government hereby accepts your offer on the solicitation identified in Item 3 above as reflected in this award document. The rights and obligations of the parties to this contract shall be subject to and governed by this document and any documents attached or incorporated by reference. |
|---|---|
| B. SIGNATURE OF PERSON AUTHORIZED TO SIGN<br><br>*[signature]* | A. UNITED STATES OF AMERICA (Signature of Contracting Officer)<br><br>*[signature]* |
| C. NAME OF SIGNER<br>Wayne H. Calabrese | B. NAME OF CONTRACTING OFFICER |
| D. TITLE OF SIGNER<br>President | Scott P. Stermer, Contracting Officer |
| /22/2000 | C. DATE<br>3/7/2000 |

AUTHORIZED FOR LOCAL REPRODUCTION

OPTIONAL FORM 307 (9-97)
Prescribed by GSA - FAR (48 CFR) 53.215-1(c)

## Year 2000 Compliant

1.  This clause applies to information technology systems (hardware, software, and systems comprised of information technology products) used in performance of this contract.

2.  Examples of (but not limited to) non-computer information systems:

    a.  Access devices
    b.  Analog voice systems
    c.  Cameras (still and video)
    d.  Medical equipment
    e.  Elevators
    f.  Security Systems
    g.  Fire control systems
    h.  Generators
    i.  HVAC Systems
    j.  Communications Systems

3.  The Contractor shall provide and maintain an information technology system which is Year 2000 Compliant. Complete records of all Year 2000 Compliant inspections performed by the Contractor shall be maintained and made available to the Government during contract performance.

4.  If any of the systems used do not conform with Year 2000 requirements, the Government will require the Contractor to perform any and all services necessary to ensure information technology systems conform with Year 2000 requirements, at no increase in contract amount.

5.  The rights of the Government and remedies described in this clause are in addition to all other rights and remedies set forth in this solicitation. Specifically, the Government reserves its rights under the Inspection of Services and Termination Clauses.

### Certification

I hereby certify that all information technology systems utilized in performance of this contract will be Year 2000 Compliant.

_____

Name
Wayne H. Calabrese, President & COO

January 25, 1999
Date

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  OAR - Operational Availability Rate.  The monthly rate for
2  computer services/resource components which is a percentage
3  calculated by dividing the accumulated monthly down time hours by
4  the total number of hours of operation for a given month.

5  Prime Contractor - The entity to which the Government has awarded
6  the contract.

7  Professional Staff - Staff employed in the Medical, Educational,
8  Religious and Psychological disciplines.

9   P.S. - Program Statement.  A BOP written directive that
10  establishes policy in a given area.

11  Safety Equipment - Including but not limited to fire fighting
12  equipment (e.g., chemical extinguishers, hoses, nozzles, water
13  supplies, alarm systems, portable breathing devices, gas masks,
14  fans, first aid kits, stretchers) and alarm systems.

15  Sensitive Information - Any information which could affect the
16  national interest, law enforcement activities, the conduct of
17  Federal programs or the privacy to which individuals are entitled
18  under Section 552a of Title 5, U.S.C.

    SENTRY - The BOP's on-line, real time data base system, used
19  primarily for maintaining information about Federal inmates.   It
21  contains information about sentencing, work assignments,
22  admission/release status and other special assignments for
23  monitoring inmate status.  The SENTRY system also includes
24  property management and other modules which address most aspects
25  of incarceration.

26  Subcontract - Any agreement entered into by the prime contractor
27  with another entity to provide services and supplies to
28  accomplish performance of the contract.

29  USMS - United States Marshals Service.

30  Warden - The contractor's official, regardless of title (e.g.,
31  Chief Executive Officer (CEO) or Facility Administrator) who has
32  ultimate responsibility for the overall management and operation
33  of the institution.

34  Additional definitions are contained in the ACA Standards for
35  Adult Correctional Institutions.

4

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    III. OBJECTIVE

2    A.  Performance Requirements

3    This SOW sets forth the contract performance requirements for the
4    comprehensive management and operation of a contractor-owned/
5    contractor-operated corrections facility for a low security adult
6    male population.

7    Housing facilities shall be provided to accommodate at least
8    1,200 low security beds at a single site.  In addition, the
9    institution shall include a special housing unit (segregation)
10   with a capacity of at least 10% of the institution's rated
11   capacity.

12   The contractor shall ensure that the institution is operated in a
13   manner consistent with the mission of the BOP.  It is the mission
14   of the BOP to protect society by confining offenders in the
15   controlled environments of prison and community-based facilities
16   that are safe, humane, cost-efficient, and appropriately secure,
17   and that provide work and other self-improvement opportunities to
18   assist offenders in becoming law-abiding citizens.

19   The institution shall be located within a 300 mile radius of the
20   United States Capitol, Washington, D.C.

21   Contract performance shall be for a three-year base period with 7
22   one-year options, exercised unilaterally by the Government, for a
23   potential term of ten years.

24   Within 365 days following contract award, the contractor shall
25   notify the CO it is ready to accept inmates and assume full
26   responsibility for the operation, maintenance and security of the
27   institution.

28   It is essential that the contractor be fully prepared to accept
29   responsibility for performing the requirements of the contract,
30   thus ensuring the safety and security of the community.
31   Therefore, the BOP will perform numerous assessments to ensure
32   contract compliance prior to issuance of the NTP (See Contract
33   F.2).

34   Unless otherwise specified, all plans, policies and procedures,
35   including those identified in the ACA standards, shall be
36   developed by the contractor and submitted in writing to the CO

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1   for review and concurrence prior to issuance of the NTP.  Once
2   concurrence has been granted, these plans, policies and
3   procedures shall not be modified without the prior written
4   acknowledgment of the CO.

5   If the BOP determines the contractor is capable of accepting
6   inmates, the NTP will be issued.  The contractor shall begin
7   accepting inmates within 30 days after issuance of the NTP.

8   It is anticipated that the BOP will predominantly designate
9   individuals committed as DC sentenced felons to the institution.
10  However, the BOP may designate any inmate within its custody
11  utilizing the same designation criteria as used at other BOP
12  facilities.  P.S. 5100.06, Security Designation and Custody
13  Classification Manual, outlines the procedures for designating
14  inmates.

15  Designations to the institution are anticipated to occur at an
16  estimated rate of 40 inmates per week.  The estimated weekly
17  designation of 40 inmates to the institution will result in the
18  population meeting the 1,200 bed requirement in 30 weeks.  The
19  institution designation schedule of 40 inmates per week is an
20  estimate only.  Actual designations will depend upon many
21  factors, including but not limited to, the contractor's ability
22  to provide services in accordance with the SOW; the sentencing of
23  offenders by the DC and Federal Courts; the designation of
24  offenders by the BOP.

25  Unless otherwise indicated, the contractor shall furnish all
26  personnel, management, equipment, supplies and services necessary
27  for performance of all aspects of the contract.

28  Unless explicitly stated otherwise, the contractor is responsible
29  for all costs associated with and incurred as part of providing
30  the services outlined in this contract.

31  B.  Contract Compliance

32  All services and programs shall comply with the SOW; the U.S.
33  Constitution; all applicable Federal, state and local laws and
34  regulations; applicable Presidential Executive Orders (E.O.); all
35  applicable case law, consent decrees, and Court Orders.  Should a
36  conflict exist between any of the aforementioned standards, the
37  most stringent shall apply.  When a conflict exists and a
38  conclusion cannot be made as to which standard is more stringent,

6

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1   the CO shall determine the appropriate standard.  The contractor
2   shall comply with and implement any applicable changes to BOP
3   policy, DOJ regulations, Congressional mandate, Federal law, DC
4   law, or E.O.  Should the Government invoke such changes the
5   contractor retains its rights and remedies under the terms and
6   conditions of the contract.

7   The BOP reserves its rights to conduct announced and unannounced
8   inspections of any aspect of contract performance at any time and
9   by any method in order to assess contract compliance.

10  C.  General Administration

11  Unless otherwise specified by the CO, the contractor is required
12  to perform in accordance with the most current edition of the ACA
13  Standards for Adult Correctional Institutions and Standards
14  Supplement.

15  The contractor shall obtain ACA accreditation within 24 months of
16  NTP and shall maintain continual compliance with the above
17  referenced ACA standards and supplements during performance of
18  the contract, unless otherwise specified by the BOP.  Once full
    accreditation has been obtained, the contractor shall maintain
    this accreditation throughout the life of the contract, inclusive
21  of any option year exercised.  Failure to perform in accordance
22  with contract requirements and to obtain ACA accreditation within
23  24 months of NTP will, at a minimum, result in a reduction of the
24  contract price.

25  Accomplishment of some ACA standards is augmented by BOP policy
26  and/or procedure.  In these instances, the SOW identifies and
27  provides direction for the enhanced requirements.

28  The contractor is responsible for a Quality Control Program (QCP)
29  which ensures all requirements of this SOW are achieved.  The
30  specific requirements for the QCP are detailed in Section J,
31  Attachments 2, 3, and 4 of the contract.

32  Several sections of this SOW require the contractor to maintain a
33  system of records identical to the BOP's.  The contractor shall
34  not establish a separate system of records without prior written
35  concurrence by the CO.  This requirement is necessary to maintain
36  consistency of inmate records as inmates transfer throughout the
37  BOP.

7

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1   tracking system which ensures all Congressional/Judicial
2   inquiries and program recommendations are responded to in a
3   timely and accurate manner.  All Judicial/Congressional
4   inquiries and contractor responses, specifically related to an
5   inmate, shall be made part of the inmate's central file.

6   The CO shall be notified when a request is made for inmate or
7   employee interviews or facility visits by any representative of
8   the media as defined by P.S. 1480.03, Contact with News Media.
9   The contractor shall coordinate all public information related
10  issues with the CO and clear, in advance, all press statements
11  and releases.

12  The contractor shall ensure its employees agree to use
13  appropriate disclaimers clearly stating the employees' opinions
14  do not necessarily reflect the position of the BOP or DOJ in any
15  public presentations they make or articles they write that relate
16  to any aspect of contract performance or prison operations.

17  D.  Fiscal Management

18  The commissary shall be operated by the contractor as a privilege
19  to inmates.  Any revenues earned in excess of those needed for
20  commissary operations shall be used solely to benefit inmates in
21  accordance with P.S. 4500.04, Trust Fund/Warehouse/Laundry
22  Manual, Chapter 4504.  The commissary shall make available gender
23  specific items for purchase that are not required to be furnished
24  by the contractor.  Inmates shall have the opportunity to
25  purchase from the commissary at least once a week.  The
26  contractor shall ensure that inmates spend no more on purchases
27  than the BOP spending limit excluding those items listed in P.S.
28  4500.04, Trust Fund/Warehouse/Laundry Manual, Chapter 4526.  The
29  contractor shall maintain an inventory of items stocked in the
30  commissary and ensure that no prohibited items in accordance with
31  P.S. 4500.04, Trust Fund/Warehouse/Laundry Manual, Chapter 4522
32  are stocked.  The commissary inventory shall be provided to the
33  CO upon request.  The sales price for commissary items shall be
34  computed in accordance with P.S. 4500.04, Trust Fund/Warehouse/
35  Laundry Manual, Chapter 4523.

36  Inmates are permitted to receive funds from outside sources
37  (e.g., from family, friends, bank accounts).  Either outside
38  funds or those generated from work may be used to pay for
39  products and services from the commissary.

·9

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

2.  Law enforcement agency checks covering the past five years.
3.  Employment vouchering for the last five years.
4.  Employment Eligibility Verification (DOJ-INS Form I-9).
5.  Credit check. (For employment purposes as described in the Fair Credit Reporting Act).
6.  FBI Name and Fingerprint forms completed.
7.  National Crime Information Center (NCIC) check.
8.  National Law Enforcement Telecommunications (NLETS) check.
9.  Conditional Offer of Employment.
10. Urinalysis.
11. Questionnaire for Public Trust Positions (SF-85P or approved equivalent) - all applicants receiving conditional offer.
12. Supplemental Questionnaire for Selected Positions (OPM Form 85P-S or approved equivalent).
13. Notify CO of scheduled EOD and Limited Background Investigation (LBI) initiation.

Contractor responsibilities subsequent to EOD:

14. Notification to CO of actual EOD within 24 hours.
15. Receipt and review of LBI report.
16. Notification to CO of decision regarding employment.

The contractor shall utilize the Pre-employment Interview Questionnaire and Guidelines of Acceptability (Guidelines) for job applicants as noted in Step 1 above (Guidelines will be made available to the contractor after contract award). There may be occasions where a job applicant's past behavior is unacceptable as defined by the Guidelines, but the contractor still desires to select the applicant. In this case, the contractor shall request the Guidelines be waived. This waiver request shall be submitted to the CO in writing and include: 1) the details and circumstances surrounding the applicant's behavior which is outside the Guidelines; 2) the reason(s) why the applicant should receive further consideration; and, 3) the availability of other suitable applicants.

The contractor shall fingerprint all applicants using BOP supplied forms. Completed fingerprint forms and the SF 85P and SF 85P-S (or equivalents) with original signatures and dates

11

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  shall be submitted to the CO for each applicant offered
2  conditional employment.  The BOP will initiate the National
3  Agency Check which includes the FBI name and fingerprint check.
4  The BOP will ordinarily advise the Warden or designee of the
5  results of name and fingerprint checks within 90 working days of
6  submission to the FBI.

7  The contractor shall complete Steps 1 - 6 on each prospective
8  employee prior to submitting information required by Steps 7 and
9  8 to the CO for completion.

10  The Warden or designee shall be the contractor's liaison for the
11  processing of data required for the BOP to conduct NCIC/NLETS,
12  name and fingerprint checks.  The information listed below shall
13  be provided for each on-site applicant, to include subcontractor
14  personnel and volunteers:  full name (with aliases, maiden name
15  if applicable, or other names used); date of birth; gender; place
16  of birth; social security number and race.  Included with this
17  information, the Warden or designee shall certify Steps 1 - 6
18  above have been accomplished with satisfactory results for each
19  applicant.

20  The BOP may require additional information to process NCIC/NLETS
21  and name checks, therefore, the contractor's employment
22  application document shall contain information regarding
23  applicant height; weight; eye and hair color; markings, scars and
24  tattoos; citizenship; driver's license number and State of issue;
25  and current address.

26  The contractor shall keep the BOP apprised of the volume of
27  applicants.  The BOP will ordinarily advise the Warden or
28  designee of the results of applicant NCIC/NLETS checks within
29  seven working days following receipt of accurate and complete
30  NCIC/NLETS data from the contractor.

31  Based upon the Warden's certification and the results of the
32  NCIC/NLETS, the BOP will grant conditional approval for the
33  applicant to work under the terms of this contract.  Upon receipt
34  of this approval, the contractor may grant the applicant a
35  conditional offer of employment.  The contractor shall provide
36  the CO with advance written notification of all employees'
37  scheduled EOD.  Written notification of all on-site employees
38  actual EOD shall be provided to the CO within 24 hours of an
39  employee reporting to work.

12

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    Acceptability Standards, but the contractor still desires to
2    retain the employee. In such cases, the contractor shall submit
3    a written request for waiver of the Acceptability Standards to
4    the CO which includes the details and circumstances surrounding
5    the employee's behavior and the reason(s) why the employee should
6    be retained.

7    The BOP will be the final approval authority for all contractor
8    staff who work with Federal inmates under the terms of this
9    contract. No individual who is under supervision or jurisdiction
10   of any parole, probation or correctional authority shall be
11   employed under this contract. Persons with previous misdemeanor
12   criminal convictions or a felony conviction, who are not under
13   supervision, may be considered for employment; however, the BOP
14   shall be the approval authority in all such cases. The BOP may
15   give consideration to such factors as criminal history, time
16   elapsed since conviction(s) and subsequent adjustment in the
17   community.

18   The contractor shall ensure all employees are reinvestigated
19   periodically, as prescribed in the Scope and Coverage of a
20   Periodic Reinvestigation in Section J, Attachment 8 of the
21   contract. Employees will be required to complete required
      investigative forms and fingerprint cards for submission to the
      BOP. The BOP will initiate the National Agency Check, which
24   includes the name and fingerprint checks. Upon receipt, review,
25   and resolution of any derogatory information contained in the
26   reinvestigation report, the Warden shall forward to the CO a
27   written determination regarding the employee's continued
28   employment under this contract. A copy of the reinvestigation
29   report shall be attached to the Warden's written request.

30   Should the institution staff turnover rate exceed an acceptable
31   level, as determined by the CO, or repetitive NCIC/NLETS or
32   fingerprint checks are necessary due to contractor error, the
33   actual cost of processing the NCIC/NLETS, name and fingerprint
34   checks shall be withheld from amounts due the contractor.

35   The contractor shall ensure all employment practices are in
36   compliance with U.S. Department of Labor requirements in addition
37   to applicable state and local requirements.

38   In the absence of a collective bargaining agreement, the
39   contractor shall enter into a written employment agreement with

14

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  G.  Case Records

2  All inmate files (e.g., central files, medical files and judgment
3  and commitment files) are to be prepared, maintained, retired and
4  disposed of in accordance with the BOP format.  Policy and
5  procedures shall be developed to ensure the confidentiality and
6  security of all inmate files (e.g., judgment and commitment
7  files, central files, U.S. Parole Commission mini-files) in
8  accordance with P.S. 5800.07, Inmate Systems Management Manual,
9  P.S. 5800.11, Central File, Privacy Folder and Parole Mini-Files)
10  and in accordance with all applicable Federal provisions (e.g., 5
11  U.S.C. 552 and 552a).

12  The contractor shall interact with other agencies to satisfy
13  outstanding inmate obligations including, but not limited to:  1)
14  processing of Federal and state writs; 2) administration of the
15  Interstate Agreement on detainers; 3) detainer inquiries; 4)
16  lodging and removal of detainers; and 5) coordination of
17  transfer/inmate movement in and out of the institution in
18  accordance with P.S. 5800.07, Inmate Systems Management Manual,
19  Chapter 8; P.S. 5130.05, Detainers and the Interstate Agreement
20  on Detainers; P.S. 5875.08, Transfers of Inmates to State Agents
91  for Production on State Writs; and, P.S. 5800.08, Receiving and
   Discharge Manual.

23  The contractor shall:  1) maintain inmate judgment and commitment
24  files; 2) maintain file accountability and security; 3) respond
25  to inmate inquiries; 4) respond to outside requests for
26  information; 5) verify release methods and dates prior to an
27  inmate's release; and other related functions.

28  The contractor shall comply with the Privacy Act of 1974,
29  (5 U.S.C. 552a) and 28 CFR, Parts 16 and 513.

30  No inmate shall be admitted to, or released from, institution
31  custody without prior BOP approval.

32  H.  Information Systems and Research

33  The BOP's Information System environment includes mainframe,
34  local area network (LAN) and wide area network (WAN) components.

35  The BOP's mainframe software environment exists in an internally-

19

1  developed application named SENTRY which is used to support
2  institution operations.  The contractor shall provide and
3  maintain hardware and software to access SENTRY, in the manner
4  referenced in this SOW, to operate the institution.

5  The technical hardware environment in which computer services are
6  to be performed consists of IBM-compatible Personal Computers
7  (PCS) operating on a LAN.  In addition to providing for the
8  inter-connection of PC workstations, the LAN also provides
9  connections to a BOP centralized gateway which connects to an
10 IBM-compatible mainframe computer located in a DOJ data center.

11 All network operating system hardware not furnished by the
12 Government must remain compatible with BOP equipment throughout
13 the life of the contract.

14 Contractor provided hardware and software necessary to
15 participate in the BOP's information system environment is
16 provided at Section J, Attachment 15.

17 All network operating system software, applications software and
18 configurations not furnished by the Government shall be the same
   release, version and configuration currently specified by the CO
   throughout the life of the contract.  The contractor shall adhere
21 to P.S. 1237.10, Network Standards and its associated Technical
22 Reference Manual (TRM).

23 The contractor shall ensure that the inmate "automated system of
24 records" is compatible with standard BOP facility and operational
25 requirements.

26 Examples of the procedures for which the contractor shall use
27 SENTRY include, but are not limited to: admissions and releases;
28 inmate counts; medical data; inmate classification and
29 programming; education data; discipline data; the victim/witness
30 program; and, as directed by the BOP, sentence computations
31 including good time and United States Parole Commission actions.
32 The contractor has the option to use SENTRY for any other
33 procedures as approved by the CO.

34 The contractor shall adhere to P.S. 1237.11, Information Security
35 Programs which governs such areas as: security for and access to
36 sensitive information and systems; minimum personnel security
37 pre-requisites for computer system users and administrators; and

20

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  security and access to computer rooms, etc.  The contractor shall
2  monitor all security procedures to ensure compliance.

3  The contractor shall ensure fundamental information technology
4  resources (e.g., computer hardware, network and operating system
5  software and telecommunications facilities) used in performance
6  of this contract function properly and are maintained in good
7  operating condition.  A minimum OAR of 97% is required for all
8  such resource components.  The contractor shall ensure that such
9  resources shall be compatible with existing and planned BOP
10  equipment, systems and data exchange functions.

11  GroupWise shall be configured as a secondary domain to the BOP
12  primary domain and shall have no physical or logical connections
13  to any external mail system.  The contractor's network shall have
14  no physical or logical connectivity to any external systems
15  except the BOP WAN, unless specifically approved in advance by
16  the CO.

17  Advance approval from the CO shall be obtained for all proposed
18  research projects.  These include projects conducted by the
19  contractor, subcontractors, or any other party.  The CO shall be
20  kept advised of the progress of all research projects, have total
21  access to all documents, and be provided a copy of the final
22  report prior to any publication.

23  The contractor is required to participate in any research task
24  pursued by the BOP and shall gather and provide any information
25  requested.  Contractor participation is anticipated to be
26  primarily in the area of gathering and submitting statistical
27  information.  Research data shall be provided to the Government
28  through SENTRY and/or through the automated data entry facilities
29  of the BOP's General Retrieval System (GRS) or other means as
30  specified by the BOP.  The BOP will provide software for the GRS.
31
32  At the discretion and request of the CO, the contractor shall
33  distribute the Staff Prison Social Climate Survey to a sampling
34  of staff (ranging from 35 to 100 percent).  The Government shall
35  determine the survey sample.  The contractor shall allow staff to
36  complete the survey (generally 45 minutes) while in a paid
37  status, collect the surveys and provide them to the CO.

38  At the discretion of, and compensated by, the Government, an
39  independent evaluator, may interview and/or administer surveys to

21

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK
Request for Proposal PCC-0004*

1  construction and contract performance. These updates shall be
2  provided to the CO within 30 days of any changes made. Site
3  utilities include, but are not limited to: water and sewer lines;
4  gas lines; tunnels; steam lines; chilled water lines; recording
5  layouts; elevations; modifications; additions; etc. Two copies
6  of the As-built drawings shall be provided to the CO in AUTOCAD
7  release 14.0 on a CD-ROM no later than 180 days after issuance of
8  the NTP.

9   Promptly after the occurrence of any physical damage to the
10  institution (including disturbances), the contractor shall report
11  such damage to the CO. It shall be the responsibility of the
12  contractor to repair such damage, to rebuild or restore the
13  institution consistent with the master design and construction
14  specifications for the facility at no cost to the Federal
15  Government. Any deviation from the original design and
16  construction specifications shall require the prior concurrence
17  of the CO.

18  The BOP anticipates a nominal number of BOP staff will be
19  on-site to monitor contract performance and manage other BOP
20  interests associated with operation of the private facility.
21  With BOP concurrence, the contractor shall designate
    approximately 2,500 square footage of administrative office space
    for BOP staff operations. BOP office space shall be climate
24  controlled and located consistent with the administrative office
25  space for contractor staff. The contractor shall be responsible
26  for all maintenance and costs associated with space designated
27  for BOP staff.

28  The contractor shall provide no less than 10 parking spaces
29  reserved for Government use.

30  J.  Security and Control

31  At least one inmate count every 24 hours shall be a stand-up
32  count. SENTRY shall be used for reporting all counts. All counts
33  shall be documented in separate logs and maintained in the inmate
34  housing unit, control center and shift supervisor's office for a
35  minimum of 30 days.

36  Policy and procedures for the maintenance and security of keys
37  and locking mechanisms shall be developed. The procedures shall
38  include, but are not limited to: method of inspection to expose

25

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1   injuries requiring medical attention (does not include routine
2   medical evaluation after the incident); fights resulting in
3   injuries requiring medical attention; fires; full or partial
4   lockdown of the institution; escape; weapons discharge; suicide
5   attempts; deaths; hunger strikes; adverse incidents that attract
6   unusual interest or significant publicity; adverse weather
7   impacting security of the institution (e.g., fence damage, power
8   outages, severe flooding); bomb threats; central inmate
9   monitoring cases admitted to a community hospital; witness
10  security cases taken outside the institution; significant
11  environmental problems that impact institution operations;
12  transportation accidents (airlift, bus, etc.) resulting in
13  injuries, death or property damage; and sexual assaults.

14  Immediately following CO notification, the contractor shall
15  report any serious incident using WAN Form 583, Report of
16  Incident completed in accordance with P.S. 5500.09, Correctional
17  Services Manual.

18  The BOP may investigate any incident pertaining to performance of
19  this contract.  The contractor shall cooperate with the
20  Government on all such investigations.

21  The contractor shall maintain a urine surveillance program which
22  complies with P.S. 6060.05, Urine Surveillance to Detect and
23  Deter Illegal Drug Use.  A laboratory certified by the National
24  Institute of Drug Abuse of the Department of Health and Human
25  Services shall be utilized to test urine samples.

26  The contractor's contraband control procedures shall include
27  frequent pat searches of inmates and the use of supervised walk-
28  through and hand-held metal detectors at all compound gates and
29  entrances to housing units.

30  K.  Safety and Emergency Procedures

31  The contractor shall submit an institution emergency plan to be
32  fully operational prior to issuance of the NTP.  The plan shall
33  receive the concurrence of the CO prior to implementation and
34  shall not be modified without the written concurrence of the CO.

35  The contractor shall have written agreements with appropriate
36  state and local authorities that provide for notification and

29

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  requests for assistance in the event of incidents that may have
2  an adverse impact on the community.

3  The emergency plan shall include provisions for two or more
4  disturbance control teams. Protective clothing and equipment for
5  each team member and 30% of all additional institution staff,
6  shall be provided by the contractor and maintained in a secure
7  location outside the secure perimeter of the low security
8  institution.

9  Any decision by the BOP or other Federal agencies to provide
10 and/or direct emergency assistance at the institution will be at
11 the discretion of the Federal agencies. The contractor shall
12 reimburse the Federal agency(ies) for any and all expenses
13 incurred as a result of providing such assistance.

14 The CO shall be notified immediately in the event of an escape.
15 Attempts to apprehend the escapee(s) shall be in accordance with
16 the Emergency Plan. The contractor shall follow notification
17 practices and procedures as set forth in P.S. 5553.05,
18 Escapes/Deaths Notification and WAN Form 583, Report of Incident,
19 shall be submitted.

L. Discipline

21 The contractor shall comply with the policy and procedures for
22 inmate discipline as contained in 28 CFR 541 and P.S. 5270.07,
23 Discipline and Special Housing Units. The contractor's DHO and
24 alternate shall be trained and certified by the BOP prior to
25 acceptance of inmates. All data regarding the discipline
26 incident report process shall be entered into SENTRY.

27 M.  Inmate Rights

28 The contractor shall stock and provide inmates with BOP
29 administrative remedy forms to accommodate any claims directly
30 related to BOP matters (e.g. sentence computation; designation
31 and transfer issues; prior custody).

32 The contractor shall ensure religious services program standards
33 as established by the Religious Freedom Restoration Act are
34 maintained.

30

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1   N.   Reception and Orientation

2   The contractor shall comply with P.S. 5800.08, <u>Receiving and</u>
3   <u>Discharge Manual,</u> when entering inmate admission and release
4   data.

5   The search of inmates admitted to, or released from, low or
6   higher security institutions shall include a strip search
7   performed by contractor staff.  The search shall be conducted by
8   persons of the same gender, except in exigent circumstances.

9   Inmates shall be fingerprinted using Government supplied forms
10  and submitted to the FBI in accordance with P.S. 5040.04, <u>FBI</u>
11  <u>Forms, Submission to the FBI,</u> and P.S. 5800.08 <u>Receiving and</u>
12  <u>Discharge Manual</u>.

13  The intake process shall include, at a minimum, medical and
14  social screening prior to inmate release to the general
15  population.  Psychological screening shall be provided for each
16  inmate within 24 hours of arrival at the institution.

17  The contractor shall ensure all requirements related to P.S.
18  5180.04, <u>Central Inmate Monitoring Manual</u> are maintained.

19  In the event an inmate is transferred to or from a foreign
20  country,  28 CFR 527 and 18 U.S.C. 4100, et seq. shall be
21  followed.

22  The contractor is advised that P.S. 5580.05, <u>Personal Property,</u>
23  <u>Inmate,</u> provides procedures related to inmate property.  Property
24  of inmates transferred to other correctional facilities from the
25  institution shall meet the requirements of P.S. 5580.05, <u>Personal</u>
26  <u>Property</u>.  Property accompanying an inmate transferred from the
27  institution that is outside the scope of P.S. 5580.05 shall be
28  returned to the institution at the contractor's expense for
29  appropriate disposition(also at the contractor's expense).  All
30  inmate personal property shall be inventoried and a BOP Form 383,
31  <u>Inmate Personal Property Form</u> completed upon inmate admission and
32  discharge.

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1    O.    Classification

2    The contractor shall ensure classification and program review of
3    inmates in accordance with the requirements contained in P.S.
4    5322.10, *Classification and Program Review of Inmates*, P.S.
5    5100.06, *Security Designation and Custody Classification Manual*
6    and 28 CFR 524 are accomplished.  In addition, the contractor
7    shall enter and keep current all required BOP SENTRY transactions
8    and written documentation related to the classification and
9    program review of inmates, progress reports and central inmate
10   monitoring system.  A system of records and review to ensure
11   compliance with P.S. 5100.06, *Security Designation and Custody*
12   *Classification Manual,* and related transactions shall be
13   developed and maintained.

14   The contractor shall follow all applicable provisions related to
15   the *Violent Crime Control and Law Enforcement Act of 1994* (P.L.
16   103-322), ensuring all notification requirements are
17   accomplished.

18   A financial responsibility system mandating inmates establish a
19   financial plan to meet legitimate financial obligations in
     accordance with 28 CFR 505. (P.L. 102-395) and 545.10 shall be
     developed and maintained.

22   The contractor shall develop policy and procedures concerning
23   victim and/or witness notification which meet the requirements
24   outlined in 28 CFR 551 and the *Victim and Witness Protection Act*
25   *of 1982*.

26   P.    Health/Mental Health Care

27   The contractor shall provide all essential health services while
28   meeting the applicable standards and levels of quality
29   established by the ACA and the designated BOP ambulatory health
30   care accreditation provider, JCAHO.  In addition, the contractor
31   shall adhere to all applicable Federal, state and local laws and
32   regulations governing the delivery of health services and
33   establish the necessary quality controls to ensure all policies
34   and procedures are designed and implemented in a manner to
35   promote orderly and efficient delivery and management of health
36   services to the inmate population.

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1   The contractor shall obtain full accreditation by JCAHO for the
2   institution within 24 months of NTP and shall maintain continual
3   compliance with applicable JCAHO standards during performance of
4   the contract.  Once full accreditation has been obtained, the
5   contractor shall maintain this accreditation throughout the life
6   of the contract, inclusive of any option year exercised.  The
7   contractor shall be responsible for all costs associated with
8   obtaining and maintaining full accreditation by JCAHO.

9    The provision of medical services commensurate to the level of
10   care available in the community is an essential component of
11   successful performance under the contract.  The contractor is
12   referred to the following list of P.S's and TRM's as guides to
13   the BOP's standard of health care delivery:

14        P.S. 6000.05        "Health Services Manual (HSM)"
15        P.S. 6010.01        "Psychiatric Treatment and Medication,
16                             Administration Safeguards For"
17        P.S. 6080.01        "Autopsies, Authority to Order"
18        P.S. 6100.01        "Health Promotion and Disease Prevention
19                             for Inmates"
20        P.S. 6190.02        "Infectious Disease Management"
          TRM  011-01         "Pharmacy Technical Reference Manual"
21        TRM  008.02         "Sentry Medical SMD/MDS Technical
23                             Reference Manual"
24        P.S. 5310.12        "Psychology Services Manual"
25        P.S. 5324.03        "Suicide Prevention Program Statement"
26        P.S. 5310.13        "Management of Mentally Ill inmates"
27        P.S. 5324.04        "Sexual Assault Prevention/Intervention
28                             Program"

29   Administration - Prior to issuance of NTP, the contractor shall
30   designate a health services Point of Contact (POC) who shall be
31   responsible for the delivery of health services under the
32   contract.  The POC shall have full authority to act on behalf of
33   the contractor on all matters relating to the operation of the
34   health services portion of the contract.  An alternate may be
35   designated; however, the contractor shall identify those times
36   when the alternate shall be the primary POC.

37   All health care services shall be provided within the HSU.  For
38   cases of emergency and other medically necessary situations,
39   arrangements (i.e., subcontracts) shall be made with local health

33

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  care providers to obtain essential health services.

2  Services - The contractor shall have written plans and procedures
3  for providing urgent medical, health, mental health and dental
4  services.  The plan shall include, but is not limited to, the
5  following: (1) 24 hour a day, seven day a week emergency medical,
6  health, mental health and dental care; (2) initial health
7  screening; (3) health appraisal examination; (4) daily triaging
8  of complaints; (5) sick call procedures; (6) special medical
9  programs and services for, but not limited to, inmates with
10  chronic needs or requiring convalescent care; (7) mental health
11  and substance abuse services; (8) staffing/health care
12  specialists; (9) ancillary services - radiology, laboratory,
13  etc.; (10) dental services - routine and emergency; (11)
14  pharmaceutical services and supplies; (12) optometric services;
15  (13) health education; (14) medical diets; (15) infectious
16  diseases; and (16) quality control/peer reviews.

17  Infectious Disease - The contractor shall comply with all OSHA
18  regulations and BOP infectious disease requirements in the
19  delivery of health care services.  All inmates shall be screened
20  for Tuberculosis within 48 hours of intake and annually
21  thereafter.  Screening shall consist of either a PPD (Mantoux
22  method) or PA chest x-ray as clinically indicated.

23  Inmate Death - In the event an inmate death occurs, the
24  contractor shall immediately notify the CO and submit a written
25  report within 24 hours.  The contractor shall fingerprint (right
26  thumb or right index) the deceased and staff performing the
27  fingerprinting shall date and sign the fingerprint card to ensure
28  that positive identification has been made.  The fingerprint card
29  shall then be hand delivered to the CO.

30  Personal property of a deceased inmate shall be inventoried and
31  forwarded to the designated family member, the nearest of kin or
32  the Consular Officer of the inmate's country of birth.

33  If death is due to violence, an accident surrounded by unusual or
34  questionable circumstances, or is sudden and the deceased has not
35  been under immediate medical supervision, the contractor shall
36  notify the coroner of the local jurisdiction to request review of
37  the case, and if necessary, examination of the body.  The
38  contractor shall establish coroner notification procedures
39  outlining such issues as performance of an autopsy, who will

34

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1   perform the autopsy, obtaining state-approved death certificates
2   and local transportation of the body. In the event an autopsy is
3   conducted, the contractor shall ensure the body is turned over to
4   the designated family member, the nearest of kin or the Consular
5   Officer of the offender's country of birth.

6   In the event the deceased inmate is indigent, the Government will
7   reimburse the contractor for reasonable burial costs as approved
8   in advance by the CO.

9   Medical Records - Consistency in content and format of medical
10  records of inmates transferring between the institution and other
11  Government facilities is a critical component of care for
12  inmates.

13  The contractor shall adhere to the HSM, Chapter 5, Sections 1
14  through 17 - Health Records, in preparing, formatting,
15  documenting, maintaining, releasing and all medicolegal aspects
16  of an inmate's medical record. The contractor is responsible for
17  supplying medical record folders, consistent with the
18  specification provided by the BOP, only for those inmates who are
19  new designations into the institution or in cases where
    transferred medical records cannot be located. The Government
    shall provide to the contractor all applicable Government forms
22  necessary to document an inmate's medical record.

23  The contractor shall adhere to HSM, Chapter 2, Section 3 -
24  Sensitive Medical Data\Medical Duty Status Reporting for the
25  reporting and accountability of medical data on all inmates
26  assigned to the institution. This includes utilizing the SMD/MDS
27  TRM on BOPDOCS.

28  Medical Transfers - Prior to admitting an inmate to an outside
29  medical facility for inpatient care, with the exception of
30  emergency cases, the contractor shall obtain pre-certification
31  approval of the BOP's Office of Medical Designations and
32  Transportation (OMDT). The contractor shall submit this request
33  for approval to OMDT via the BOP's SENTRY computer system using
34  the request procedures established in accordance with HSM,
35  Chapter 7. A copy shall also be sent to the CO.

36  In emergency cases, the contractor shall submit the above
37  mentioned request to OMDT within 24 hours of the inmate's
38  admission for inpatient care to an outside medical facility.

35

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  posters and pamphlets to the inmate population.

2  A comprehensive parenting education program to promote and build
3  family relationships shall be made available for voluntary
4  attendance by the inmate population.

5  The contractor shall provide General Education Development (GED)
6  testing by becoming a GED testing center through the GED Testing
7  Service or by securing GED testing services through a local
8  provider.

9  The contractor shall utilize the SENTRY Education Data System
10 (EDS) to enter the required information pertaining to individual
11 inmate participation and progress in the institution education
12 program.  The contractor is referred to the SENTRY Education TRM
13 as a guide to the use of the SENTRY EDS.

14  T.  Recreation and Activities

15  The contractor shall comply with Section 611 of P.L. 104-208,
16  Title I, Section 101(a)(the Zimmer Amendment), which addresses
    use of recreational equipment and materials by Federal inmates.

18  The contractor shall ensure that correctional staff are assigned
19  in sufficient numbers to supervise all inmate recreation
20  activities.

21  U.  Telephone

22  The contractor shall provide a telephone system for inmates
23  capable of accommodating both debit and collect phone calls.  The
24  contractor shall establish procedures that permit inmates to make
25  telephone calls, including in cases of emergency or inmate
26  indigence.

27  All inmates, with the exception of inmates in the Special Housing
28  Unit or Control Unit, shall be allowed a minimum of 120 minutes
29  of collect calling per month unless telephone privileges have
30  been suspended as part of a disciplinary sanction.

31  Inmates in the Special Housing Unit or Control Unit are entitled
32  to a minimum of one social call per month.

38

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1　The system shall prevent inmates from calling any telephone
2　number not included on the inmate's official telephone list.
3　This list shall be generated within five working days of the
4　inmate's arrival and contain up to 30 telephone numbers that the
5　inmate is authorized to call via debit or collect procedures,
6　except as otherwise authorized by the Warden for good cause.

7　The contractor shall ensure and document that any individual
8　placed on an inmate's telephone list receives notice that they
9　have been placed on such list. The notice shall advise the
10　individual of the procedures for removal from the inmate's
11　telephone list. The contractor shall ensure that the telephone
12　numbers of an inmate's crime victim or victims are not included
13　on the inmate's official telephone list. The contractor shall
14　allow each inmate the opportunity to update their telephone list
15　up to three times per month, except as otherwise authorized by
16　the Warden for good cause.

17　If authorized to do so under applicable law, the contractor shall
18　monitor and record inmate telephone conversations. If inmate
19　telephone conversations can be monitored under applicable law,
20　the contractor shall provide notice to inmates of the potential
　　for monitoring. However, the contractor shall also provide
　　procedures for inmates to be able to place unmonitored telephone
23　calls to their attorneys of record.

24　Telephone rates shall not exceed the dominant carrier tariff rate
25　and shall conform to all applicable Federal, state and local
26　telephone regulations.

27　Any income received by the contractor from collect calls which is
28　in excess of expenses incurred, to include refunds/rebates from
29　carriers, shall offset the cost of this contract. The contractor
30　shall provide the CO with copies of any contracts between the
31　contractor and the inmate telephone system provider(s). The
32　contractor shall provide the CO with all documentation in support
33　of any agreement that the contractor has regarding income,
34　refunds, rebates and other monetary or nonmonetary reimbursements
35　involving the inmate telephone system. The contractor shall also
36　provide the CO with copies of all invoices and other
37　documentation of expenses incurred and income received in regards
38　to the inmate telephone system with its monthly request for
39　contract payment and apply the credit against the monthly
40　payment. The CO shall also have total access to all telephone
41　operation records.

39

## SECTION G - CONTRACT ADMINISTRATION DATA

### G.1 CONTRACTING OFFICER'S REPRESENTATIVE

(a) An individual shall be named after contract award and designated as the Contracting Officer's Representative(COR)to act as contract monitor. Numerous individuals will also be named after contract award and designated as Contracting Officer's Technical Representatives (COTR). The COTRs will assist the COR in the performance of monitoring

(b) The contract monitor is responsible for the technical direction of the performance of all work under this contract. The term "technical direction" is defined to include, without limitation, the following:

1. Directions to the contractor which re-direct the contract effort, shift work emphasis between areas or tasks, require pursuit of certain lines of inquiry, fill in details or otherwise serve to accomplish the contractual scope of work.

2. Supply information to the Contractor which assists in the interpretation of technical portions of the Statement of Work.

3. Review, inspect, and accept reports and information to be provided by the Contractor to the Government under the contract.

4. Evaluate the performance and certify all invoices for payment.

(c) Technical direction must be within the general scope of work stated in the contract. The contract monitor does not have authority to, and may not issue, any direction which:

1. Constitutes an assignment of additional work outside the general scope of the contract.

2. Constitutes a change as defined in the contract clause entitled "Changes".

3. Change any of the expressed terms, conditions, fixed price, or time for contract performance. Any such revisions shall be authorized in writing only by the Contracting Officer.

**G.1 (Continued)**

(d)  In the event the contract monitor desires a change to the contract within one or more of the categories as defined in (1) through (3) of paragraph (b), he must direct such request to the Contracting Officer. The Contracting Officer will handle such request within applicable laws and regulations.

(e)  During the term of the contract, the Contracting Officer, or his successor, shall administer the contract on behalf of the Government. Technical matters which cannot be resolved by the Contractor and the contract monitor as well as other contractual difficulties, are to be brought to his immediate attention.  The Contracting Officer may be reached at the e-mail address and telephone number shown on the OF 308, block 7.

**G.2  PAYMENT SCHEDULE**

In consideration for the contractor's satisfactory performance of services called for under this contract, the BOP shall make payment to the contractor at the rates identified in the schedule.  For billing purposes, inmate days will be calculated based upon a daily official (SENTRY) inmate count to be specified by the BOP subsequent to award.

Monthly payment shall be based upon the contractor's fixed price divided by the number of months within each performance period.  For the base period and each option period, the fixed incremental unit price will only apply when the number of inmate days within the monthly payment period exceeds 95% of the designated bed space.  Except for inmates receiving outside medical care, inmates not physically located within the facility shall not be included in the Average Daily Population.

The contractor assumes full responsibility and risk to perform required services identified within the SOW regardless of unforeseen events, including Acts of God. Should an Act of God occur which results in the contractor being unable to meet contract requirements, the Government reserves its rights under the contract to reduce the contract value.

Should it become necessary during performance to reduce the inmate population within any monthly payment period below an average daily population due to deficient contract performance, the BOP shall reduce the base price and payment

## SECTION H - SPECIAL CONTRACT REQUIREMENTS

### H.1  CHANGE IN KEY PERSONNEL

Following contract award, any change in key personnel during contract performance, is subject to the review and approval of the COR.  The Contractor shall submit evidence that the qualifications of the prospective replacement personnel are equal to or greater than personnel vacating the positions. Such requests for review and approval shall be in writing.

### H.2  AWARD-FEE DETERMINATION PLAN

The Award-Fee Determination Plan (AFDP) upon which the determination of award fee is based is contained as an attachment in Part III, Section J.

The AFDP may be revised unilaterally by the Government at any time during the period of performance of the contract; however, any such revision will be subject to timely contractor notification and will not become effective until the subsequent evaluation period.

### H.3  AWARD-FEE

The award-fee provided for in this clause shall be in addition to the base price.  Beginning on the effective date of this contract, the Government shall evaluate the contractor's performance on a semi-annual basis to determine if the contractor is eligible for an award-fee.

During the base period and each succeeding option period, the contractor may earn a minimum award-fee of zero dollars to a maximum award-fee of five percent of the total payment received for the period rated (excluding reimbursable costs).  The balance of any unearned award-fee for the evaluation period is not carried over to any subsequent evaluation period.

The contractor agrees that the evaluation of performance and the determination as to the amount of award-fee earned will be made by the BOP Fee Determination Official (FDO), in accordance with the attachment in Part III, Section J and that said determination shall be final and not subject to the terms of the "Disputes" clause or any appeal.  The contractor shall be advised in writing of the determination and of the reasons why the award-fee was earned or why it was not earned in order that the contractor may improve its performance, if the latter is applicable.

Sanctions for Misconduct (cont)

    b.    The CO may direct the contractor to remove any employee from the contract for failure to comply with the standards of employee conduct.

    c.    If an office of Inspector General (OIG), BOP Office of Internal Affairs (OIA), or local investigation reveals a violation of a standard of conduct, the Warden, shall ensure the sanction imposed is consistent with the schedule of penalties.

## 8. Reporting Misconduct

    a.    Employees shall report all violations, or apparent violations, of the standards of conduct immediately to the Warden or designee. Employees shall not be prohibited from referring matters directly to the OIG or OIA.

    b.    The Warden or designee shall immediately report all allegations and appearances of misconduct or impropriety to the CO.

## 9. Investigations of Misconduct

The OIG is responsible for investigating violations of laws and regulations committed by Department of Justice employees and its contractors for appropriate criminal prosecution, civil litigation and administrative action. The OIA is responsible for ensuring allegations and appearances of misconduct and impropriety, including criminal matters, are referred immediately to OIG. OIA's investigative authority is delegated by OIG.

    a.    The contractor is prohibited from conducting internal investigations of employee misconduct or apparent misconduct, without the expressed authority from the OIG, OIA, or the CO.

    b.    The BOP employee liaison on issues related to employee misconduct shall have access to records pertaining to allegations and instances of employee misconduct. The liaison may conduct investigations of misconduct and review the contractor's enforcement of the standards of conduct.

    c.    The contractor and all employees shall fully cooperate in any internal or external investigations. The BOP shall have access to all personnel, operational and corporate records for the purpose of conducting investigations, inspections and audits.

<u>Investigations of Misconduct</u> (cont)

d. The contractor will not conduct preliminary investigations without approval from the CO. Any preliminary investigation is limited to gathering statements from victims and witnesses and collecting relevant documents. All information and documents gathered during a preliminary investigation shall be provided to the CO.

e. With the approval of the CO, a confidential medical examination of any inmate(s) who allege physical abuse shall be conducted.

f. If the contractor is authorized by the CO to conduct a local investigation, a report shall be prepared and submitted no later than 45 days after the investigation is authorized. The report shall contain findings of fact, conclusions based on evidence documents and affidavits. The contractor shall provide periodic updates to the CO concerning all on-going local investigations.

g. Polygraph examinations, body wires, electronic listening devices and/or consensual telephone monitoring during any local investigation shall be approved by OIA.

h. The contractor shall maintain and preserve all documents compiled during an internal investigation. No investigative records shall be destroyed without the expressed permission of the CO.

10. <u>Employee Training</u>

a. Employees and volunteers shall be provided a copy of the standards of conduct and the contractor shall maintain documentation verifying receipt.

b. A procedure through which employees and volunteers receive training regarding the standards of conduct, as part of their institutional familiarization and annual training, shall be established which defines the minimum number of hours received each year.

c. To deter misconduct, employees shall be provided advice regarding the standards of conduct.